IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JASON GLEN McKINLEY                                                                           PLAINTIFF
ADC #139327

V.                                         NO. 5:07cv00239 JWC

EVERETTE WILKERSON, et al                                                               DEFENDANTS

MEMORANDUM OPINION AND ORDER

**I. Background**

On September 17, 2007, Plaintiff, proceeding pro se, filed this 42 U.S.C. § 1983 civil rights action (doc. 2). On May 16, 2008, Defendant Huey filed a motion for summary judgment and brief in support (doc. 59, 60) seeking to dismiss Plaintiff's complaint on the following grounds: (1) that he is immune from negligence liability under both state and federal law; (2) that Plaintiff has failed to state a viable deliberate medical indifference claim; (3) that Plaintiff has failed to establish that he suffered a physical injury as a result of Defendant's alleged actions; and (4) that Plaintiff has failed to exhaust his administrative remedies as to his medical claim. Plaintiff, through appointed counsel, has responded to the motion (see doc. 73, 74, 75, 82).

According to Plaintiff's amended complaint (doc. 21), on November 12, 2006, he was arrested by Defendant Cole without incident and transported to the Sheridan Detention Center where he was placed in the booking cell. He did engage in conversation through a talk screen in the booking cell door with a female who was also arrested in connection with the same incident. Plaintiff removed his shoes, socks, shirt, and pants in anticipation of shower and dress-out to be placed in general population. Plaintiff alleges Defendant Wilkerson began screaming and cursing at him and then Wilkerson and Defendant

Wickers approached his cell. Defendant Wilkerson had his taser drawn. Plaintiff grabbed his belongings, entered the hallway, and proceeded to the door of the visitation room. As he entered visitation, Defendant Wilkerson forcefully grabbed him by the arm and tried to shove him into visitation. When Plaintiff reflexively pulled away, Defendant Wilkerson used the taser on him— aiming first at his ribs. Plaintiff dropped his clothing, fell to the floor, and reacted by grabbing Defendant Wilkerson's arm, pinning and pulling off Defendant Wilkerson's necktie. Plaintiff claims he was lying on the floor of visitation on top of his clothing when Defendant Wilkerson used his taser again— this time to his neck. This second shock caused Plaintiff to convulse and hit his head resulting in several knots that are still visible as well as a four-inch long gash, fully lacerated to the skull. While waiting for emergency medical services ("EMS") to arrive, Plaintiff had a seizure. This was allegedly not reported to EMS technicians. Plaintiff claims that Defendants Cole and Wickers both observed Defendant Wilkerson draw his taser before approaching Plaintiff and apply both shocks but did not intervene to prevent the assault and battery. Following the incident, Plaintiff was taken to Hot Springs County Memorial Hospital where eleven staples were placed in his head to close the laceration. Plaintiff alleges that he now requires medication for epileptic seizures and severe migraine headaches and will remain on these medications for the remainder of his life.

On November 20, 2006, Plaintiff was transported to Baptist Health Clinic in Sheridan, Arkansas, for follow-up treatment for the head injury he sustained on November 12, 2006. His staples were removed and he received treatment for migraine and seizure medication. Plaintiff alleges he received the medication for several months once he submitted monthly medical requests. Defendant Huey, the Grant County sheriff, then

visited the detention center and allegedly advised Plaintiff that "he only gets a certain amount of money for medical treatment for inmates and that he would have to transport Plaintiff to the Jefferson County Jail to stay where there is medical staff." After one month of submitting medical requests for refills that were ignored, and not being transferred, Plaintiff contacted Defendant Cole, the acting jail administrator, and his medication was continued. During the month without medication, Plaintiff alleges he suffered migraine headaches and a seizure.

According to Defendant Huey (see doc. 61), Plaintiff cannot prove that his medication and treatment for migraine headaches and seizures was delayed for a month, or that any delay was attributable to him as opposed to the Sheridan Detention Center jailers who were responsible for the day-to-day administration of Plaintiff's medication. Instead, Defendant contends that the proof establishes that he promptly procured refills for Plaintiff's medication in response to his requests for same. Plaintiff concedes the accuracy of Defendant Huey's statement of indisputable and material facts with the exception of ¶¶ 7-10, for which Plaintiff does not presently have sufficient information to know whether the statements are accurate and correct (doc. 75).

## II.  Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. Reed v. ULS

Corp., 178 F.3d 988, 990 (8th Cir. 1999).  A moving party is nevertheless entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he will have the burden of proof at trial.  Celotex, 477 U.S. at 322-23.  To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit" or otherwise, showing that a genuine, material issue for trial exists.  Id. at 324; Fed. R. Civ. P. 56(e).  A nonmovant has an obligation to present affirmative evidence to support his claims.  Settle v. Ross, 992 F.2d 162, 163-64 (8th Cir. 1993).  A litigant's verified complaint is generally considered an affidavit for purposes of summary judgment.  Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994).

### III.  Analysis

**A.     Administrative Exhaustion**

The Court initially notes that Plaintiff's counsel fails to concretely address two of the four specific grounds Defendant Huey maintains mandate his dismissal.[1]  Conversely, Defendant raises failure to exhaust as a ground for dismissal yet fails to provide this Court with an explanation of the process one must exhaust at the Sheridan Detention Center.  Despite these omissions, administrative exhaustion is an affirmative defense that Defendant need only to raise for this Court to address fully.[2]  See Guerra v. Kempker, 134 Fed. Appx. 112 (8th Cir. 2005) (unpub. per curiam) (citing Nerness v. Johnson, 401 F.3d

---

[1] (1) that he is immune from negligence liability under both state and federal law; and (2) that Plaintiff has failed to exhaust his administrative remedies as to his medical claim.

[2] Effective advocacy requires more than the cursory treatment given the issue by Defendant's moving papers.  Care must be taken to refer the Court to current law and to demonstrate how the legal principles apply to the particular facts of the case.

874, 876 (8th Cir. 2005) (per curiam)) (district court erred in dismissing complaint sua sponte for failure to exhaust administrative remedies; failure to exhaust is an affirmative defense, and plaintiff need not plead that he has exhausted his remedies in order to avoid pre-service dismissal).

An inmate must exhaust all available administrative remedies prior to initiating a § 1983 prison conditions suit. 42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted"); Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003) ("Under the plain language of § 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court . . . . If exhaustion was not completed at the time of filing, dismissal is mandatory"); Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000) (holding that "all available prison grievance remedies must be exhausted as to all of the [plaintiff's] claims"); Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), cert. denied, 531 U.S. 1156 (2001) (stating that "if administrative remedies are available, the prisoner must exhaust them," regardless of his subjective beliefs about their availability).

Although Plaintiff was a pretrial detainee when the events giving rise to this action occurred, he was nevertheless required, under the express wording of § 1997e(a),[3] to appeal his grievance(s) to the highest administrative level available to him at the Sheridan Detention Center. In his original complaint form, Plaintiff indicates that he did not file any grievances, or complete the exhaustion process, in connection with the claims he raises. He states: "This is not a prison conditions lawsuit" (see doc. 2, § VI A & B). Contrary to

---

[3] No prisoner confined to any jail, prison, or other correctional facility, may bring an action with respect to prison conditions under section 1983 until such administrative remedies as are available are exhausted. Id.

5

Plaintiff's impression, claims of excessive force while in custody and medical indifference do concern the conditions of his confinement/detention. Defendant Huey's evidence (see doc. 61, Exh. 1) demonstrates that Plaintiff was arrested on November 12, 2006, and on August 8, 2007, he was sent to the Arkansas Department of Correction. Plaintiff filled out detainee medical care request forms for prescription refills on January 22, 2007, February 10, 2007, March 1, 2007, April 8, 2007, April 9, 2007, May 5, 2007, May 31, 2007, July 4, 2007, July 9, 2007, and August 7, 2007. Each request form indicates that action was taken, in most instances through Dr. Paulk's office. Plaintiff's request dated March 1, 2007, simply states: "I need to find out if I can get some type of migraine medicine for my headaches" and indicates that he has been waiting for one month. His request on February 10, 2007, immediately prior to his March 1, 2007, request states: "I had my amitriptyline filled today but they did not refill my epidrin, can you please get my other prescription filled too." In response to these two requests, Plaintiff was scheduled to see Dr. Paulk on March 6, 2007. In the only grievance Plaintiff filed, dated May 6, 2007, he explains his problem as follows: "I need to check to see if Grant County has refilled my medicine." Plaintiff did not comply with grievance form instructions; i.e., he did not fold the completed form and write "grievance" on the outside, did not give it to any jailor (there is no jailer signature or response), and did not use the same form to appeal any unsatisfactory response. More importantly, in none of these materials does Plaintiff indicate in any manner an issue with Defendant Huey, much less an accusation that Defendant Huey visited the detention center and advised Plaintiff that he could not continue to provide him with medical care due to the cost. Nor do any of these materials

indicate any adverse medical consequences as a result of any lag times experienced in refilling Plaintiff's prescriptions.

This Court takes judicial notice of the instructions contained on the Sheridan Detention Center's jail detainee grievance form which clearly indicates that there is a grievance procedure in place at the detention center that requires detainees to follow specific steps in any complaint they wish to pursue administratively and, ultimately, through the courts. Pursuant to Johnson v. Jones, Defendant Huey must be dismissed from Plaintiff's action.[4]

### B.  Deliberate Medical Indifference

The Court additionally points out that Plaintiff's case against Defendant Huey can be dismissed on the merits as well. Although suggesting that a more stringent standard might be appropriate in assessing pretrial detainees' medical claims, the Eighth Circuit has not yet determined that detainees are entitled to greater protection than is found in the Eighth Amendment against jail officials' deliberate indifference to their serious medical needs. See Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 906 (8th Cir. 1999), cert. denied, 528 U.S. 1157 (2000) (referring to Johnson-El v. Schoemehl, 878 F.2d 1043, 1055 n.8 (8th Cir. 1989) and David v. Hall, 992 F.2d 151, 152 (8th Cir. 1993)). Therefore, the Eighth Circuit has generally analyzed pretrial detainees' medical claims under the standard set forth in Estelle v. Gamble, 429 U.S. 97, 104 (1976).

To prevail on his claim of deliberate medical indifference, therefore, Plaintiff must prove acts or omissions by Defendant Huey "sufficiently harmful to evidence deliberate

---

[4] Because administrative exhaustion is a threshold issue, this Court is not required to address Defendant Huey's remaining arguments in support of dismissal.

indifference to [his] serious medical needs." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Estelle, 429 U.S. at 106)). The Eighth Circuit has interpreted this standard to include both objective and subjective components: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Jolly, 205 F.3d at 1096 (citing Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)); see also Stetter v. Riddick, 6 Fed. Appx. 522 (8th Cir. 2001) (unpub. per curiam) (citing Moore v. Jackson, 123 F.3d 1082, 1086 (8th Cir. 1997)). This standard has been well settled for some time and Plaintiff's burden is substantial. In determining whether Defendant Huey was deliberately indifferent to his serious medical needs, Plaintiff must demonstrate "more than negligence, more even than gross negligence." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Moreover, "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Id.

First, Plaintiff must establish that he suffered from an objectively serious medical need. A medical need is "serious" if it has been diagnosed by a physician as mandating treatment or if it is so obvious that even a lay person would recognize the necessity for a physician's treatment. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); see also Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999). Next, Plaintiff must establish that Defendant Huey was (1) personally aware of his serious medical needs; and (2) deliberately disregarded those needs. Coleman, 114 F.3d at 785-86.

When an inmate is complaining about a delay in treatment, as Plaintiff is, the objective "seriousness" of the deprivation must be measured by reference to the *effect* of any delay. Coleman, 114 F.3d at 784 (citing Crowley v. Hedgepeth, 109 F.3d 500, 502

(8th Cir. 1997)).  To succeed on his claim, Plaintiff must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment, i.e., that Defendant Huey ignored a critical or escalating situation, or that the delay adversely affected his prognosis.  Id.; Beyerbach v. Sears, 49 F.3d 1324, 1326-27 (8th Cir. 1995).[5]

Generally, a supervisory official cannot be liable under § 1983 for alleged medical mistreatment unless he was personally involved in the violation or where his corrective inaction constitutes deliberate indifference toward the violation.  Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (citing Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993)); see also Johnson v. Lockhart, 941 F.2d 705, 707 (8th Cir. 1991) ("Abdication of policy-making and oversight responsibilities can reach the level of deliberate indifference when tacit authorization of subordinates' misconduct causes constitutional injury").  To be held liable, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see."  Boyd, 47 F.3d at 968 (quoting Ripson v. Alles, 21 F.3d 805, 809 (8th Cir. 1994)).

Giving Plaintiff the benefit of all reasonable factual inferences, the Court agrees that he suffers from an objectively serious medical need that mandates treatment.  However, he cannot meet the requirement of proving delay amounting to deliberate indifference.  The evidence indicates that during the month of February 2007, Plaintiff was receiving medication on a daily basis (see doc. 74, Exh. 4).  His February 10, 2007, medical care

---

[5] See also the following unpublished cases of Jackson v. Hallazgo, 30 Fed. Appx. 668 (8th Cir. Mar. 6, 2002) (unpub. per curiam) (citing Coleman, 114 F.3d at 784) ("[a]n inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs"); O'Neal v. White, 221 F.3d 1343 (8th Cir. July 12, 2000) (unpub. per curiam) (citing Crowley, 109 F.3d at 502) (concluding that plaintiff's "failure to submit verifying medical evidence to show a detrimental effect from any delay in tests, surgery, or alternative treatments was fatal to his Eighth Amendment claim").

request form states: "I had my amitriptyline filled today but they did not refill my epidrin, can you please get my other prescription filled too." His request dated March 1, 2007, simply states: "I need to find out if I can get some type of migraine medicine for my headaches" and indicates that he has been waiting for one month. Amitriptyline <u>is a migraine medication</u> and the records indicate, as well as Plaintiff's own testimony, that the amitriptyline prescription had been refilled as of the February 10, 2007, medical care request (<u>see</u> doc. 61, Exh. 4). Epidrin, the other medication he requested, is also a migraine medication. Clearly, Plaintiff was mistaken when his request alleged he had not received migraine medication for a month. On March 6, 2007, Plaintiff was scheduled to see Dr. Paulk (doc. 61, Exh. 2). At that time Dr. Paulk wrote Plaintiff prescriptions for amitriptyline for his migraines and carbamazepine for his seizures.

The only detainee medical care request form that references a one-month delay in receiving medication concerns Plaintiff's migraine medication. The evidence establishes that his migraine medication was not delayed. Moreover, Plaintiff was never forced to go a "month without medication" as he alleges in his amended complaint— the Sheridan Detention Center inmate medication logs he attaches to his brief in opposition to Defendant's summary judgment motion clearly establish that he received medication practically daily during his entire incarceration (<u>see</u> doc. 21, ¶29 & doc. 74, Exh. 4). Last, Plaintiff has never established that any alleged delay that may have taken place was attributable to Defendant Huey. In fact, Plaintiff has failed to even demonstrate that Defendant Huey was personally involved in any violation that may have taken place. For these reasons, Plaintiff's case against Defendant Huey can also be dismissed on the merits.

## IV. Conclusion

In accordance with the above, IT IS, THEREFORE, ORDERED that:

1. Defendant Huey's motion for summary judgment (doc. 59) is GRANTED. Plaintiff's case against Defendant Huey is hereby DISMISSED WITH PREJUDICE.

2. Plaintiff's case will proceed at this time against Defendants Cole, Wilkerson, and Wickers.

IT IS SO ORDERED this 27th day of January, 2009.

              _/s/ Jerry W. Cavaneau_
              UNITED STATES MAGISTRATE JUDGE