IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JASON GLEN MCKINLEY,
ADC #139327                                                                PLAINTIFF

5:07CV00239HLJ

DAVID HOOKS, et al.                                                        DEFENDANTS

## MEMORANDUM AND ORDER

A trial was held in this case before the Court on February 22, 2010. Following a presentation of the testimony of the parties and witnesses, and submission of exhibits, the Court enters the following Findings of Fact and Conclusions of Law.

### I. Facts

Plaintiff is a state inmate currently incarcerated at the Randall E. Williams Detention Center of the Arkansas Department of Correction (ADC). He filed this action pursuant to 42 U.S.C. § 1983 against defendants, alleging constitutional claims of excessive force and failure to protect as a result of an incident that occurred in November, 2006, while he was incarcerated at the Sheridan Detention Center, Sheridan, Arkansas. Specifically, plaintiff alleges that defendant Wilkerson unreasonably used excessive force against him by administering a taser to him on two occasions, and that defendants Wicker and Cole failed to protect him from harm. Plaintiff asks for monetary relief from the defendants.

**A. Plaintiff's Testimony**

According to the testimony of the plaintiff, on November 12, 2006, he was arrested and transported to the Sheridan Detention Center, where he was placed in a cell labeled "H1". While in the cell, he tried to communicate with Krystal Mitchell, his girlfriend, who was arrested at the

1

same time and was sitting on a bench outside his cell waiting to be "booked in" to the Jail. Plaintiff assumed they would both be required to post a bond, and attempted to communicate with her concerning the preparations they would need to make. Ms. Mitchell stopped talking with him when officers asked them to stop talking, but plaintiff stated he continued to try and communicate with her. Defendants Wilkerson and Wickers came to his cell and told him they were moving him to another cell. In anticipation of this, plaintiff stated he removed all his clothing, except his underwear, since he was familiar with the procedures involved with being "booked" into the Jail. Plaintiff stated he offered no physical resistance while being removed from the H1 cell, and he walked down the hall with his clothes in his hands. Defendant Wickers opened the door to the visitation cell, where plaintiff was being placed, and defendant Wilkerson grabbed plaintiff by the arm and started shoving him toward the room. Plaintiff stated he told them not to put their hands on him and he turned around to repeat it to Wilkerson when Wilkerson tased him in the side. As a reflex action, plaintiff stated he grabbed Wilkerson in order to get the taser off of him, and he grabbed Wilkerson's tie. Plaintiff started to fall, taking Wilkerson with him, and Wilkerson tased plaintiff in the neck. According to plaintiff, this caused him to convulse and hit the door jamb sticking out from the wall, gashing the top of his head. An ambulance was called, and plaintiff was transported to the Malvern Medical Center, where eleven staples were used to close the gash in his head. A CT scan was also conducted, which revealed no brain damage. He was then returned to the Jail.

Plaintiff later was transported to the Paulk Family Clinic, where the staples were removed and he was treated for migraine headaches and seizures. See Plaintiff's Ex. 14. Plaintiff stated at trial he was not aware he had suffered a seizure until he read the police report in preparation for

his criminal trial. He stated he did not remember his first seizure, and he simply lost consciousness. He testified that, since the incident, he has suffered five to six seizures, and he suffers from periodic headaches, which are well managed by medication. Plaintiff admitted being verbally resistant to the defendants at the time they were escorting him to the second cell, but he denied taking a swing at defendant Wilkerson. Plaintiff admitted making threatening statements against the defendants in the ambulance on his way to the Medical Center.

**B. Defendants' Testimony**

Defendant Cole, who was the supervising officer at the time of the incident, stated he participated in plaintiff's arrest, and smelled alcohol on plaintiff's breath at the time. He witnessed the incident involving defendants Wilkerson and Wickers. He stated that while plaintiff was in the first cell, he continued to yell at his girlfriend, causing disruption within the Jail. When defendants escorted him out of the cell, plaintiff stiffened up and continued to "holler and cuss." Defendant Cole stated that when they reached the doorway of the visitation cell, plaintiff spun around at the officers with one fist balled up, and then the officer tased him. Defendant also stated plaintiff grabbed Wilkerson's shirt and tie and Wilkerson tased him a second time in the neck. As plaintiff fell, he hit his head on the locking mechanism that jutted out from the door frame. Cole testified he went to get towels for plaintiff and when he returned, plaintiff was yelling, screaming, cussing, and threatening the officers, and he was beating his head against the windows that separated the cell from the hallway.

Cole also testified concerning the types of tasing that can occur: the drive stun, which is used to get someone off of you and involves placing the gun directly on the skin; and the release of probes, which attach to the skin and completely disable the victim. Cole stated that although the

police department policy requires an officer to announce he is using the taser, such is more for the safety of the surrounding officers, and it did not occur in this situation. See Plaintiff's Ex. 3B, which provides, "When an officer deploys the TASER and immediately prior to using the TASER, the TASER officer should notify any and all other officers on the scene that he is going to utilize the TASER by announcing '**TASER.**'" Cole added that this provision of the policy does not distinguish between the types of taser uses. Finally, he stated plaintiff did not cause any more difficulty at the Jail after he returned from the Medical Center.

Defendant Wilkerson is a police officer with the Sheridan Police Department, and he was the officer who tased plaintiff. He testified that, while in the first cell, plaintiff screamed and yelled profanities through the door, and he beat and kicked on the door. After officers asked plaintiff to stop, he became louder, and the officers arranged to move him down the hall away from the booking and control room areas. When Wilkerson and Wickers appeared at plaintiff's cell to move him, plaintiff had removed all his clothes except for his underwear, stood in a fighting stance and told the officers to come into the cell. The officers refused and plaintiff walked out of the cell and down the hallway with some resistance. Wilkerson stated defendant Wicker grabbed plaintiff and told him to move, and when plaintiff withdrew and yelled for them to take their hands off of him, Wilkerson decided to pull out his taser gun in case it was needed. As the two tried to move plaintiff into the visitation cell, plaintiff told them not to put their hands on him and grabbed Wilkerson by the tie and shirt. Wilkerson then tased plaintiff in the side. Wilkerson stated plaintiff then tried to take a swing at him, and as he attempted to tase plaintiff a second time, he tried to tase plaintiff in the shoulder, but missed and hit him in the neck instead. At that point, Wilkerson stated, plaintiff fell and pulled him down with him. Plaintiff hit his head on the door frame as he fell. When

Wilkerson noticed plaintiff was bleeding, he yelled for someone to call the ambulance. Plaintiff then began to cuss and yell threats at the officers. He threw the towels down, dug his fingers into his wound and pulled it open, spit blood on the walls and head-butted the walls. Wilkerson stated it took the emergency medical technicians (EMTs) twenty to twenty-five minutes to get plaintiff to cooperate enough to get him on the gurney.

Officer Wilkerson stated he felt that the use of the drive stun taser on plaintiff was in accordance with his training, because he was concerned for his own physical safety when plaintiff grabbed his shirt and tie. Defendant stated drive stun does not incapacitate the subject and results in localized pain, and that he used the taser to "get plaintiff off of" him.

Defendant Wicker, a patrolman with the Sheridan Police Department testified similarly concerning the incident. He stated plaintiff was verbally abusive and argumentative, and he resisted while in the first cell and walking to the second cell. Wicker stated Wilkerson deployed his taser after plaintiff grabbed him by his shirt collar, and then hit his head as he fell. He also stated he agreed with defendant Wilkerson's actions and that they were within the guidelines of the use of force policy.

Randall and Camron Jewett, who were also working at the Jail at the time, testified concerning plaintiff's verbal disruptions and resistance to the officers. Both stated plaintiff grabbed Wilkerson's shirt and tie, and the scuffle ensued. Both also testified concerning plaintiff's conduct following the incident in which he rubbed his wound, hit the walls and windows, and continued to yell and make threats.

Virgil Snyder was the EMT who responded to the defendants' call for an ambulance, and testified he found plaintiff fully conscious, lying on the floor of the cell. When plaintiff moved

toward the door of the cell in response to Snyder's request, he became agitated and started yelling and screaming. Snyder stated he tried to calm plaintiff, but plaintiff continued to pull and tear at his injuries and pulled off bandages once they were placed on his scalp. Snyder testified it took him approximately twenty minutes to get plaintiff calm, treated, and transported on the gurney to the ambulance, but that as soon as plaintiff saw the defendants standing outside of the ambulance, he again became agitated. During the ride to the Medical Center, plaintiff also made threats to defendants and told Snyder to expect to be involved with a gunshot incident involving plaintiff and the officers, because he knew where they lived.

## II. Law

At the time of the incident, plaintiff was incarcerated as a pretrial detainee. In situations involving allegations of excessive force on pretrial detainees, the Courts have applied the Fourth Amendment standard of "objective reasonableness." Wilson v. Spain, 209 F.3d 713, 715 (8th Cir. 2000), and Moore v. Novak, 146 F.3d 531 (8th Cir. 1998). The "reasonableness" of a use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Conner, 490 U.S. 386, 396 (1989). Furthermore, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Id. At 396-97.[1]

---

[1] In Jones v. Shields, the plaintiff alleging excessive force was a convicted inmate. In analyzing his claims under the objective reasonableness standard, the Court looked to a variety of factors, including "the need for the application of physical force, the relationship between the need for physical force and the amount of force applied, and the extent of injury suffered by the inmate," Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000). In addition, while "not every malevolent touch by a prison guard gives rise to a federal cause of action, ... some actual injury must be shown," and the extent of pain inflicted is considered. Id.

In addition, to prove an Eighth Amendment claim of failure to protect, plaintiff must show defendants Cole and Wicker were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and that the defendants drew that inference. Perkins v. Grimes, 161 F.3d 1127, 1130 (8th Cir. 1999), citing Farmer v. Brennan, 511 U.S. 825, 837 (1994).

### III. Liability

In this particular case, the Court finds defendant Wilkerson's actions to have been objectively reasonable, given plaintiff's behavior and the need to make a split-second judgment in a situation that was tense, uncertain and rapidly-evolving. The Court further finds plaintiff has not met his burden of proof in establishing, by the preponderance of the evidence, that the actions of Wicker and Cole were unreasonable, or that they failed to act while aware of a substantial risk of serious harm to the plaintiff. Plaintiff did not dispute the defendants' characterization of his behavior prior to the tasing incidents. Given the consistency of the defendants' testimony and the other witness's testimony about the incident, together with the consistency of the evidence concerning plaintiff's actions prior to the incident, I must give their testimony credibility.. Accordingly,

IT IS, THEREFORE, ORDERED that plaintiff's allegations against defendants are DISMISSED with prejudice.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 4th day of March, 2010.

_____
United States Magistrate Judge